**UNITED STATES of America, Plaintiff,**

v.

**LOCAL 1804–1, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO, et al., Defendants.**

**No. 90 Civ. 0963 (LBS).**

United States District Court,
S.D. New York.

March 12, 1990.

Otto G. Obermaier, U.S. Atty. S.D. New York, New York City (Steven C. Bennett, James L. Cott, Richard W. Mark, Chad A. Vignola, Peter C. Sprung, Asst. U.S. Attys., of counsel), for plaintiff.

Thomas W. Gleason, New York City (Ernest L. Matthews, Jr., Kevin Marrinan, of counsel), for ILA Locals 1809 and 824.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City (Seymour M. Waldman, of counsel), for ILA Local 1909.

Bogucki & Scotto, New York City (Robert H. Bogucki, A. Thomas Scotto, of counsel), for ILA Local 1814.

O'Connor & Mangan, Mineola, N.Y. (J. Kenneth O'Connor, Thomas T. Heney, of counsel), for ILA Local 1804-1.

Law Office of Larry Bronson, Bayonne, N.J., Schneider, Cohen, Solomon, Leder & Montalbano, Cranford, N.J. (Edward A. Cohen, of counsel), for ILA Local 1588.

## OPINION

SAND, District Judge.

On February 14, 1990, the Government filed this action under the provisions of the Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. § 1961, *et seq.*, to remedy alleged corruption of the New York/New Jersey Waterfront, including alleged corruption of six Locals, Local 1804-1, Local 1588, Local 1814, Local 824, Local 1809 and Local 1909 ("Locals") of the International Longshoremen's Association ("ILA"). The Locals now move this Court for an order 1) authorizing counsel in this action to represent simultaneously a Local and an officer of that Local who is charged with wrongdoing in his individual capacity ("Officer Defendant") and 2) authorizing the Locals to pay fees for attorneys representing the Officer Defendants in advance of a determination on the merits of the Government's Complaint.

The parties appeared before this Court for the first time on February 26, 1990 in response to an order to show cause why a preliminary injunction should not be entered which would, among other things, immediately remove certain Officer Defendants from office, prohibit all Officer Defendants from engaging in racketeering activities, and appoint one or more court liaison officers to oversee the affairs of the Locals *pendente lite.* At the request of counsel for several defendants, this Court held a conference on March 1, 1990 to discuss the issue of representation. After receiving a brief submitted on behalf of all six Locals, "their Executive Boards and sitting officers in their capacity as union officials" and opposition papers from the Government, this Court held oral argument on March 8, 1990.

■ This suit clearly charges the Officer Defendants with misconduct injuring their Locals and their membership. The Complaint alleges that the Officer Defendants participated in a pattern of racketeering activity resulting in the domination of the Locals by the Genovese and Gambino Organized Crime Families and the Westies Organized Crime Group. Because such allegations inherently present potential conflicts of interest, counsel in this case must not represent jointly any Local and any Officer Defendant. *See Urichuck v. Clark,* 689 F.2d 40, 42 (3d Cir.1982) ("A union may not provide counsel for its officers in a suit brought against them if the interest of the union and its officers in the outcome of the case may be adverse."); *Milone v. English,* 306 F.2d 814 (D.C.Cir. 1962) ([C]ounsel who are chosen by and represent officers charged with the misconduct, and who also represent the union, are not able to guide the litigation in the best interest of the union because of the conflict in counsel's loyalties. In such a situation it would be incumbent upon counsel not to represent both the union and the officers."); *International Brotherhood of Teamsters v. Hoffa,* 242 F.Supp. 246, 256 (D.D.C.1965) ("Where, as here, union officials are charged with breach of fiduciary duty, the organization is entitled to an evaluation and representation of its institutional interests by independent counsel, unencumbered by potentially conflicting obligations to any defendant officer."). The A.B.A.Code of Professional Responsibility clearly supports the general principle that a lawyer may not represent multiple clients "if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or it would be likely to involve him in representing differing interests." A.B.A.Code of Professional Responsibility, Disciplinary Rule 5–105(B), adopted by N.Y. State Bar Association.

Counsel for the Locals argue that the interests of the Locals and the Officer Defendants in this case are aligned—a defense of the Officer Defendants is a defense of the Locals. Assuming that evaluation of the Locals' interests to be true, the need for independent counsel nonetheless remains. Conflicts problems must be resolved at the outset of litigation, before any evaluation of defense strategy can be formulated with precision.

We are not required to accept at this point the charge of the appellants that the "true interest" of the union is aligned with those of the individual appellants here; this may or may not turn out to be the fact. But in the exploration and the determination of the truth or falsity of the charges brought by these individual appellants against the incumbent officers of the union and the union itself as a defendant, the UMWA needs the most objective counsel obtainable. Even if we assume the accuracy of the appellee's [the union's] position at the present time that there is no visible conflict of interest, yet we cannot be sure that such will not arise in the future.

*Yablonski v. United Mine Workers of America*, 448 F.2d 1175, 1179 (D.C.Cir. 1971); *see also Yablonski v. United Mine Workers of America*, 454 F.2d 1036, 1041–42 (D.C.Cir.1971) ("In sum, the *sine qua non* of permissible union representation ... is the absence of any duty to another that might detract from a full measure of loyalty to the welfare of the union."), *cert. denied*, 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972). However, the requirement of independent counsel does not mean that counsel for the Locals cannot in their own defense deny any wrongdoing by the Officer Defendants. It is the responsibility of counsel for each Local to define the interests of his or her client and to defend those interests zealously within the bounds of the law and the principles of legal ethics. That such a defense may incidentally benefit some of the Officer Defendants does not interfere with the obligation on the Locals' counsel to remain independent.

■ The second issue presented is whether the costs of defending the separately-represented individual union officers in this action may be paid by either the Locals or the ILA. The parties do not dispute that if the individual officers did not engage in any wrongdoing, the union can compensate them for the costs of their defense. On the other hand, if the Government succeeds in proving misconduct by the individual officers, those defendants cannot seek reimbursement from the union. For example, in *Morrissey v. Segal*, 526 F.2d 121, 127 (2d Cir.1975), the Second Circuit held that union funds could not be used to defray the litigation expenses of union trustees who were found to have been negligent, but could be used to defray the expenses of union trustees who were found to have acted in good faith. This rule is also followed in analogous cases involving trusts and trustees, see 3 Scott, The Law of Trusts, § 188.4, at 1535, § 245, at 2155, (3d ed.1967), and corporations and their officers and directors, see Model Business Corporation Act §§ 5(a), 5(b) (permitting indemnification in civil matters if the officer or director acted "in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the corporation").

While it is clear who must ultimately bear these costs, this motion requires this Court to decide who must advance the funds during the pendency of this lawsuit. If the Officer Defendants pay the fees for their counsel, they can seek reimbursement only if they successfully exonerate themselves from liability. If instead the Locals pay for the defense of the Officer Defendants and the Government prevails on the merits, then the Locals must seek reimbursement from the Officer Defendants. In suits brought under section 501(b) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501, alleging misconduct by union officials, courts have held that individual defendants must initially finance the costs of their own defense and can seek reimbursement only if successful. *See Morrissey v. Segal*, 526 F.2d at 127 ("[U]nion officials charged with breach of fiduciary duties were properly enjoined from expending union funds for

their personal defense prior to a full determination on the merits.") (collecting cases); *see also McNamara v. Johnston,* 522 F.2d 1157, 1167 (7th Cir.1975) ("[U]nion officials charged as defendants ... should retain independent counsel and bear the financial burden of their defense."), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976); *Milone v. English,* 306 F.2d at 817 ("As a general proposition we think funds of a union are not available to defend officers charged with wrongdoing which, if the charges were true, would be seriously detrimental to the union and its membership.") (collecting cases).

Counsel for the Locals attempt to distinguish those cases as limited to suits brought under section 501(b) of LMRDA. First, as *Morrissey v. Segal* acknowledges, the prohibition against use of union funds to finance the defense of union officials charged with misconduct was partly reflective of the concern that union members as plaintiffs would be overwhelmed if the defendant union officials were financially supported by the union treasury. The Locals here argue that those "level playing field" concerns are not present in this case where the Government serves as the plaintiff. Second, the Locals argue that section 501(b) suits are brought for the benefit of the union even though the nominal plaintiff is a union member; like shareholder derivative suits, any recovery will be paid to the union treasury. The Locals argue that here the union is a defendant who would not benefit from successful prosecution of the civil RICO charges. The Locals point to the potential damage to their reputation if the Government proves that the Locals are in fact dominated by organized crime interests and to the costs to the unions of financing a court-appointed trustee. We disagree. If the Government can prove that these Locals have been dominated by organized crime, then the remedy sought will directly benefit the unions and the union members—return of democratic control to the union membership. Moreover, the Government seeks disgorgement of money taken by the Officer Defendants in violation of their fiduciary duties and distribution of those funds to the Locals as victims. The Locals are named in this action as defendants so that any remedial order can require their participation. Though nominally defendants, the Locals would "benefit" from the successful prosecution of this case in the same way that a corporation "benefits" from a successful shareholder derivative suit.

These motions are brought pursuant to the equitable powers of this Court. Absent any provision in the union bylaws permitting advance payment of litigation expenses or any similar statutory authorization,[1] we find no reason not to apply the rule developed in section 501(b) cases. In advance of a determination on the merits of the allegations in the Complaint, the Locals and the ILA should be prohibited from providing any financial support to the Officer Defendants for their individual defense.

Finally, the parties present a factual dispute as to whether the Complaint names certain Officer Defendants in their individual capacity. The defendants seek to limit our ruling to only those Officer Defendants clearly named in the Complaint "Individually and as Class Representatives" of the Gambino and Genovese Organized Crime Families and the Westies Organized Crime Group. The defendants argue that those other officers who are named without any designation, neither "in their individual capacity" nor "in their official capacity," should be treated as named only in their official capacity. We believe that a fair reading of the Complaint indicates that all the Officer Defendants are named in their individual capacity. The Complaint alleges that every Officer Defendant committed at least two substantive acts of racketeering. *See* Declaration of Chad A. Vignola, executed February 12, 1990, Exhibit 1 (summarizing Complaint's allegations of acts of

---

**1.** Many states provide by statute for advance payment of indemnification expenses in suits against officers and directors of corporations for breach of fiduciary duties. New York Business Corporation Law permits advance payment voluntarily by a corporation or by order of the court and requires repayment if the defending parties are ultimately found not entitled to indemnification. N.Y. Bus.Corp.Law, §§ 724(c), 725(c), 726(a) (McKinney's 1986).

racketeering by each Officer Defendant). The Demand for Relief also seeks both the removal from office of each individual officer named and the disgorgement of the proceeds of their crimes. Complaint at 106, ¶ 3, at 108, ¶ (g). Therefore, our ruling applies to each Officer Defendant named in the Complaint. We also find this issue to have little practical significance since motions to amend a complaint pursuant to Rule 4(h) of the Federal Rules of Civil Procedure are liberally granted, especially when brought at such an early stage in the proceedings.

The Government also seeks to bar counsel who have appeared on behalf of both a Local defendant and an individual Officer Defendant from continuing to represent the Local. Dual representation has been permitted at the preliminary stage of a lawsuit to ascertain whether the Complaint alleges wrongdoing by individual union officers which puts the interests of the union directly in conflict with the interests of the individual officers. *See Vestal v. Hoffa*, 80 L.R.R.M. (BNA) 3120, 1972 WL 864 (D.D.C. 1971). If the Government believes that counsel for any of the Locals will be unable to represent their clients independently because of any prior relationships with any of the individual officers, it may bring an appropriate motion to disqualify those attorneys.

In sum, we find that counsel cannot jointly represent any Local and any Officer Defendant and that the Locals and the ILA cannot pay for the defense of any Officer Defendant in advance of a determination on the merits of allegations in the Complaint. The Government is directed to submit to the Court a proposed order to this effect by March 14, 1990 at 4:30 p.m., and the defendants are directed to submit any response by March 16, 1990 at 4:30. Defendants' counsel are directed to file no later than March 26, 1990 amended notices of appearance if earlier notices of appearance are inconsistent with this ruling. We also extend the deadlines previously set by this Court. The defendants are directed to respond to the order to show cause by April 16, 1990, the Government's reply papers are due by April 23, 1990, and this Court will hold oral argument on April 26, 1990 at 2:15 p.m.